Dan H. Cooper, Bar No. 004900
Law Office of Dan Cooper
177 N. Church Avenue, Suite 601
Tucson, AZ 85701
(520) 367-5442
dan@cooperlaw.me

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) CR-24-05616-RM-(JR)-001 |
| Plaintiff, | ) |
| | ) **SENTENCING MEMORANDUM** |
| vs. | ) **AND OBJECTIONS TO GUIDELINES** |
| | ) **CALCULATION** |
| Francisco Duray Bell, | ) |
| | ) |
| Defendant. | ) |
| | ) |

COMES NOW the Defendant, Francisco Duray Bell, through counsel, and submits this sentencing memorandum, and objections to the guidelines calculation by the United States Probation Department. This memorandum and the objections are supported by the accompanying Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 19th day of November, 2025.

By  s/ Dan H. Cooper
Dan H. Cooper
Attorney for Defendant Bell

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

<u>INTRODUCTION</u>

Francisco Bell is a twenty-five-year-old man with no criminal history, learning disabilities, and a kind disposition, who made the mistake of a lifetime becoming involved in the instant offense. His humiliation is genuine, his remorse sincere, and his vow to never be in trouble again likely to be kept. The mitigating factors in Francisco's case far outweigh any aggravation.

I.       <u>MITIGATING FACTORS</u>

A.  REMORSE

Remorse is a non-quantifiable mitigating factor. Most people, when facing sentencing in a criminal case, claim remorse. Behavior, of course, is the best indicator of remorse. As noted elsewhere in this memorandum, Francisco has been a model citizen since his arrest, has remained employed, and has formulated goals for his future. His expressed remorse is reinforced by how he has behaved in the last fifteen months.

B.  LEARNING DISABILITY

Francisco has never attempted to make excuses for his behavior. He knows he was wrong. But anyone who interacts with him can observe he has difficulty explaining his thoughts, understanding certain concepts, and reasoning logically. He has a serious learning disability. He was placed in special education classes throughout his school years. Although his disability affects reading skills and reading fluency as well as written expression, it

has other consequences. Francisco's school records describe "weaknesses in fluid reasoning" which simply means that his decision-making skills are compromised.

Francisco's high school GPA was 1.67. Simply put, he struggled to learn. It is notable, however, that despite those struggles he was not a troublemaker. Teachers described Franscisco as a student who "tries hard" and is a "very nice and somewhat sensitive boy." Francisco's learning disability affects his judgment, his ability to make reasonable decisions, and his insight into those decisions.

C. DIFFICULT CHILDHOOD

Francisco was three years old when his mother died of Lupus. Her disease was diagnosed when she was pregnant with Francisco. As a result, his mother was sick during the three years he had with her. Francisco and his brother and sister were then raised by his father and a combination of relatives. Francisco's maternal grandmother, Linda Susy Armenta, was critical in his upbringing. His father was a long-haul truck driver who often was gone from the family for extended periods. His grandmother did all she could to provide Francisco with a normal childhood. Still, it was not easy.

Francisco describes being teased as a child because he did not have a mother. He was also a large, overweight child. And, as his school records reflect, he was sensitive to what others said about him. Coupled with his serious learning disability, Francisco's childhood was difficult. Yet, despite those problems, he remained "sweet and kind," a gentle, decent giant. In fact, letters from family members and his former football coach describe him as having a "big heart" who is a "great person." Those letters describe a young man who, despite his learning disability, worked hard to finish school and to be a good person. (See Attached Exhibit A, Letters)

### E.  MINOR ROLE

Francisco has never denied his role in the offense. He is ashamed of himself, embarrassed, and apologetic. However, to be clear, he was not an instigator or organizer of the crime and was used by his co-defendants.[1] Francisco was sent into the gun show and given money to purchase guns. He did so willingly. What is notable, though, is that the defendant who provided Francisco with the money stayed outside in the car while Francisco bought the guns. In fact, two of the co-defendants stayed outside after they provided Francisco with money and told him what to buy. Similarly, disclosure provided by the government includes multiple phone calls and text messages which the government alleges shows Francisco's involvement in gun trafficking. In fact, they do not. For example, the government cites eighty-six calls "between Bell and Turtle." Turtle is an individual named Michael Ochoa who the government believes is "involved in firearms trafficking." Ochoa worked with Francisco at a nightclub. Most of the calls were work-related or to make arrangements to socialize. Similarly, the government cites eighteen calls between Rayanna Lopez and Francisco. The calls were not related to gun smuggling. Francisco met Ms. Lopez on Tinder, and they dated for a brief time. The government further claims Mr. Bell "recruited" individuals "with clean backgrounds to illegally purchase firearms." The presentence report does not name a single individual "recruited" by Mr. Bell. It is noteworthy that one of the co-defendants "borrowed" Mr. Bell's phone and sent multiple texts and messages on it.

---

[1] The government's culpability assessment alleges that Francisco "is considered an average participant in this conspiracy." In fact, Francisco's role was average only if it is accepted that he helped recruit others to the conspiracy. His lack of criminal history and personal characteristics demonstrate he was a pawn.

## F. BEHAVIOR FOLLOWING ARREST

The most significant factor in determining Mr. Bell's culpability and role in the conspiracy is his behavior, compared with the behavior of his co-defendants, following his arrest. Mr. Bell was arrested August 4, 2024. A year has passed and, as Pretrial Services noted, he has not been a problem under their supervision. He has maintained employment and his drug tests have been negative. By contrast, Francisco's co-defendants have been in trouble with the law. Ezekqio Chavez was arrested on October 17 on new gun-related charges. A search warrant was served at the home of Carlos Martinez on October 18 and gun and drug paraphernalia were found. On October 21 agents searched Martinez' new residence and found drugs (cocaine), cash and rounds of ammunition. On that date co-defendant Anthony Avalos was stopped at the border prior to entering Mexico. Avalos was carrying $9,448 in cash. He invoked his right to remain silent. Co-defendant Brian Sotel was arrested on February 7, 2025, in Tolleson following a two-hour stand-off with police. The search of his home following his arrest revealed six AK-47 rifles as well as $4,185 cash and "fake currency."

Thus, four of the five defendants in this case have not stayed out of trouble since their arrest. (The sixth defendant, Marcus Morin, was not arrested until March 24, 2025.) The one person who has stayed out of trouble, and has attempted to live a productive life, is Francisco Bell. His behavior demonstrates the likelihood of success in the future as well as supporting his claim that he was used by the co-defendants.

## II. OBJECTIONS TO GUIDELINE CALCULATIONS

### A. USSG § 2K2.1(b)(6)(A) is not an appropriate enhancement.

Four levels were added to Mr. Bell's Offense Level Computation under USSG §2K2.1(b)(6)(A) alleging he transferred "the firearms knowing or having reasonable cause to

believe that the firearms would be smuggled out of the United States." That claim is incorrect, and no evidence supports it. In fact, Mr. Bell specifically told agents he thought the firearms "were to stay with (co-defendant) Higuera-Avalos and he added that he was unsure where the firearms would ultimately end up."

In *U.S. v. Asante*, 782 F.3d 639 (11th Cir. 2015) this four-level enhancement was approved specifically because the defendant in recorded calls stated that the guns in question "were smuggled out of the United States in cars sent to Jamaica." Similarly, in an unpublished 5th Circuit Opinion, the enhancement was not applied because there was no evidence of "what the defendant knew or had reason to believe" about the ultimate destination. *U.S. v. Green*, 360 Fed. Appx. 521, 524-5 (5th Cir. 2010).

### B. The Two Levels Added Under 2K2.1(b)(5)(A) are not appropriate.

In calculating Mr. Bell's base offense level, his conviction under 18 USC §933 was included. An additional two levels were added in the presentence report calculations because Mr. Bell was convicted under 18 USC §933(a)(3). The additional two levels are redundant and amount to double-counting. Mr. Bell's Offense Level under 18 USC §933 by necessity included 18 USC §933(a)(3).

CONCLUSION

The presentence report adequately explains Mr. Bell's background and involvement in this case. The recommendation of 24-months imprisonment is reasonable, compassionate and fact-based. But if any defendant in a case such as this one is appropriate for a probationary sentence it is Francisco. The factors set forth above need not be repeated but it is clear that those factors make him a candidate for success on probation.

RESPECTFULLY SUBMITTED this 19th day of November, 2025.

By  s/*Dan H. Cooper*
Dan H. Cooper
Attorney for Defendant Bell

## **CERTIFICATE OF SERVICE**

This document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing, which provided service to all registered case participants.



# EXHIBIT A

October 16, 2025

Honorable Rosemary Márquez

Re: United States v. Francisco Duray Bell

Your Honor:

My name is Jerome Daniels. I am a former NFL player and a longtime football coach and mentor. I also co-founded the BE A MUSHROOM (BAM) Foundation, a nonprofit focused on youth development and financial-literacy education in Arizona. I write to you because I coached and mentored Francisco Bell during his college football years as the Head coach of the Salt River Scorpions of the Hohokam Junior  College League and have known him as a young man who is respectful, teachable, and dedicated to doing things the right way.

In my experience, Francisco showed up early, stayed late, and set a steady example for his teammates. Even though he struggled with finances and hardships, He accepted coaching, took responsibility when he fell short, and never looked to blame others. Off the field, he carried himself with humility and kindness—whether helping younger players learn a play, checking on an injured teammate, or assisting staff after practice. When I learned of his guilty plea for illegal transportation of firearms, I was genuinely surprised because that conduct does not reflect the person I have known. Francisco has expressed sincere remorse to me, and I believe his shame over this incident is real. The young man I have worked with is not a "criminal" at heart; he is a good kid who made a serious mistake and is determined to learn from it.

I believe Francisco has a meaningful future ahead if given the opportunity to prove himself. He has talent, a strong work ethic, and just needs a support system.  I am confident he will take this experience to heart, return to the steady, reliable young man I know, and earn back the trust of his family and community.

Thank you for taking the time to read my letter and for considering my perspective on Francisco's character and potential.

Respectfully,

Jerome Daniels
President - Be A Mushroom Foundation 501c3
Real Estate- Homesmart Realty
602-768-3394
coachjd72@gmail.com

Website

Dear Honorable Rosemary Marquez,

My name is Andrea Celaya-Bell and I am a Service Coordinator in Tempe, AZ. Francisco is my step-son. I was introduced to him by his father 15 years ago.

Francisco was raised soley by his father before I came into the picture, as his mother passed away when he was a young boy. Francisco adjusted well to my presense and never gave us any trouble. He was very well behaved at school and at home. Although he struggled a bit with a learning disibility, he still managed to push through and graduate, walking with his class and receiving his High School Diploma. It was a very proud moment for all of us!

After H.S. Francisco began working and met his first girlfriend at work and along with that came his first heartbreak when she suddenly decided to end their relationship without reason or answers after 3 years.

I know what Francisco did was wrong and there is no excuse for his actions but I do beleive that him acting out of character during that time may have been to the sudden change and heartbreak he was experiencing.

Since this incident Francisco has been focusing on himself and has been working, he also plans to attend trade-school to become a mechanic.

I know Francisco has learned from his mistakes and I can see that he is doing his best to make up for it. He is a great person with a big heart and I am happy to know him. I wish him well and stand 100% by his side.

Thank you so much for taking the time to read my letter.

Kind regards,

Andrew Alzji-Bell

Dear, The Honorable Rosemary Marquez

Hi my name is Michael Bell Sr. I work As A warehouse manager. I am Francisco's Father

As the years of growing up Francisco loved camping with family, Disneyland trips, participate in family events, enjoyed playing football with his brother and on teams, riding gokarts, desert outing we have lots fun together.

I know Francisco has realized this big mistake. Francisco is a good kid with big heart. willing to help others. With his learning disability he has struggled but has got thru high school with great help from teachers and lots of help. Also I want to thank you for reading this letter

Thank You

Michael Bell Sr.