TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JULIE A. SOTTOSANTI
Assistant U.S. Attorney
AZ Bar. No. 025496
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
Julie.sottosanti@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States America, | 24-CR-05616-TUC-RM (JR) |
|---|---|
| Plaintiff, | |
| vs. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS** |
| Ismael Higuera-Avalos, | (Doc. 134) |
| Defendant. | |

The United States hereby responds to the defendant's Motion to Suppress. (Doc. 134).  At the time of the search, officers had (1) observed an open container in the vehicle, (2) were aware of firearm trafficking activity at a nearby gun show and (3) an occupant of the vehicle had admitted to stop officers he was prohibited and was on his way to shoot firearms.  Probable cause existed for multiple crimes.  It is of no consequence the officers' stated reason for the search was only the open container.  This court can consider probable cause that existed for any crime at the time of the search because the existence of probable cause is an objective standard.  This Court should deny the defendant's Motion.

I.     FACTS:

On August 4, 2024, a joint operation between Homeland Security Investigations (HSI) and the Tucson Police Department (TPD) was conducted at the Tucson Expo Gun Show to identify potential firearm trafficking activity.  Law enforcement observed a Jeep in the parking lot.  (000259). Four individuals were present in the Jeep. (*Id*). Two of the

individuals, later identified as this defendant and co-defendant Bell, exited the Jeep and went into the gun show. (*Id*). The remaining two individuals, later identified as co-defendants Chavez and Martinez, stayed in the Jeep. (*Id*).

Law enforcement surveilled while the defendant and co-defendant Bell began purchasing firearms. The pair then returned to the parking lot to deposit multiple rifle boxes in the Jeep. (Bates 000255). They then both returned to the gun show, made more purchases, and returned to the Jeep to deposit more firearms. (*Id*). This behavior was repeated several times. (*Id*). Officers noted that one of the purchasers spoke quietly to the driver in between gun show trips, and several firearm boxes were handed directly to the driver. (Bates 000255; 000259).

The Jeep pulled out of the gun show and was followed by TPD. Officers paced the Jeep for approximately 1.5 miles and estimated the Jeep's speed to be 80 mph in a 65 mph zone. (000254). A traffic stop was initiated, and the Jeep appropriately pulled over in compliance.

When officers approached the Jeep, they observed 17 rifle boxes in plain view in the bed of the Jeep. (000261). Officers also observed an open container of alcohol in the back passenger area of the vehicle in plain view. (Bates 000254, 000257). Co-defendant Martinez immediately stated that there was a firearm in the vehicle pocket in front of him. (Bates 000257). The defendant also told officers there was a firearm near the front center cup holder. (Bates 000254). All occupants were removed from the vehicle for officer safety. (Bates 000257). When co-defendant Chavez exited, an officer observed he was sitting on a large amount of cash. (Bates 000257). Co-defendant Chavez then told the officer he was a convicted felon on federal probation, and that he intended to go shoot the new guns that day. (Bates 000257).

Officers conducted a search of the vehicle citing the open container. They located 17 boxed long rifles, a bag containing marijuana buds, a large stack of bundled cash, loose cash, a plastic baggie with white residue, 3 handguns, and multiple firearm purchase receipts. (Bates 000262).

The defendant now files a Motion to Suppress claiming the stop was prolonged and there was no probable cause for the search.  This Court should deny the defendant's motion.

## II.    LAW AND ARGUMENT

### A. Probable Cause for Search

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  There is a general requirement that law enforcement officials must have a warrant to conduct a search, but various exceptions to this rule exist.  *Katz v. United States, 389 U.S. 347, 357 (1967.)*  It is the government's burden to justify a warrantless search.  *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991).

Under the automobile exception, because a car is "readily mobile," it can be searched with probable cause to believe it contains contraband or evidence of a crime, without any additional showing of exigency, and the search need not be contemporaneous. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam); see *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011). "Probable cause allows officers to search all containers in car that could hold objects of a search, regardless of who owns them, and without any individualized probable cause as to each container. *Wyoming v. Houghton*, 526 U.S. 295 (1999); see also *State v. Cheatham*, 240 Ariz. 1, 375 P.3d 66 (2016).

"An officer has probable cause 'when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Ewing*, 638 F.3d at 1231.  The test for probable cause is "whether the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989), overruled on other grounds by *United States v. Ruiz*, 257 F.3d 1030, 1031 (9th Cir. 2001).  The arresting officer does not need to have personal knowledge; probable cause may be based on the collective knowledge of all the officers involved in the investigation and all of the reasonable

inferences that may be drawn from the facts. *Hoyos*, 892 F.2d at 1392.

Importantly, probable cause is an **objective** standard. An officer's subjective thoughts play no role in the Fourth Amendment analysis. *Whren v. United States,* 517 U.S. 806, 811–13 (1996). And "the fact that officers acted on one rationale 'would not foreclose the [government] from justifying [the search] by proving probable cause.'" *United States v. Ramirez,* 473 F.3d 1026, 1030-31 (9ᵗʰ Cir. 2007) (citing *Florida v. Royer*, 460 U.S. 491, 507 (9ᵗʰ Cir. 2005)).

There is no legitimate expectation of privacy in the interior of a vehicle that may be viewed from the outside by a diligent police officer. *See Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (during lawful vehicle stop, officer could shine flashlight into car's interior and see driver holding small balloon; officer then shifted his position to see better into open glove compartment, where he saw white powder and vials; balloon's seizure was lawful).

*1. The Open Container in Violation of Arizona Law Provided Probable Cause for the Vehicle Search*

In this case, officers observed an open container of alcohol immediately upon approaching the Jeep, confirmed by body camera footage. An open container of alcohol within the passenger compartment of an operating motor vehicle is a criminal offense in Arizona pursuant to Arizona Revised Statute § 4-251. Once the container was observed, there was probable cause to search the vehicle in any area where potential evidence of that crime could be located. For open container, this would include any place in the vehicle where alcohol containers or receipts might be found. Therefore, there was probable cause to search the entirety of the vehicle at that point, as containers or receipts could potentially be located under seats, in side pockets, or behind objects. Alcohol containers come in a variety of shapes and sizes and could be stashed in a multitude of places within the vehicle. Therefore, the search was constitutional based on the probable cause that arose from observation of the open container.

///

*2. Probable Cause existed for Firearm Trafficking, Straw Purchase and Dealing Firearms without a License*

In addition, there was also probable cause for the search based on firearm trafficking, straw purchasing and dealing firearms without a license. (See 18 U.S.C. § 933; 18 U.S.C. § 932; 18 U.S.C. § 922(a)(1)(A)). As stated above, probable cause is an objective standard. *Whren v. United States,* 517 U.S. at 811–13. It is of no consequence what basis the officer cites as reason for the search, the government can still argue other bases justifying the search. *United States v. Ramirez,* 473 F.3d at 1030-31 ("…the fact that officers acted on one rationale "would not foreclose the [government] from justifying [the search] by proving probable cause.") The collective knowledge doctrine applies here because the search officers were in communication with those aware of facts from the gun show. *Id.* At 1032-33 ("[T]he cases suggested a limited requirement that there be a communication but not necessarily the conveyance of any actual information among officers..")

There was probable cause that the defendant was involved in firearm offenses. Agents and officers at the gun show observed the group arrive in a Jeep. Two of the individuals stayed in the Jeep, while the other two made several trips in and out of the gun show to deposit a large number of firearms in the Jeep bed. Notably, the firearms were all the same make and model. This in itself is indicative of firearm trafficking and straw purchasing, as individuals are unlikely to buy 17 of the exact same weapon for their own collection. Two individuals waiting in the vehicle during purchases added to that probable case, as well as the multiple trips to make purchases. When the defendants were asked to exit the Jeep for officer safety, co-defendant Chavez was found sitting on a stack of cash. All these facts add up to a finding of probable cause for the search based on firearms trafficking, straw purchase and/or dealing firearms without a license.

///

*3. Probable Cause existed for Prohibited Possessor Violations*

Additionally, there was probable cause to search for evidence related to a prohibited possessor charge as to co-defendant Chavez. Chavez was on probation out of Maricopa County Superior Court for a felony offense. As such, he was prohibited from possessing firearms under state law. See Arizona Revised Statute § 13-3101. Before the search, Chavez informed an officer he was on probation, it was for a felony offense, and he intended to go shoot the firearms in the Jeep with his friends that day. The officer had probable cause to conduct a search for evidence of the prohibited possessor offense. For that reason, the search was further supported by probable cause based on Arizona prohibited possessor statutes.

### B.  Length of Stop

The length of the stop was appropriate here. Officers almost immediately saw an open container in violation of Arizona law. This happened well before the amount of time necessary to even begin a citation for the speeding violation. Officers were entitled, and obligated, to investigate that criminal offense. In addition, it was appropriate to remove the occupants from the Jeep. "Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations." *United States v. Willis*, 431 F.3d 709, 717 (9th Cir. 2005)(citations omitted). Here, both this defendant and Martinez pointed out readily accessible firearms within the Jeep immediately upon contact. It was necessary for the officers to remove the occupants from a vehicle full of firearms to ensure the safety of everyone involved. And, as discussed below, there was probable cause to search the vehicle immediately upon stop, so there can be no prolonged detention while that occurred.

### III.    CONCLUSION

Probable cause existed for multiple criminal offenses at the time the vehicle was searched in this matter. Officers saw an open container in plain view, were aware of the

gun show activity along with the large number of firearms in the vehicle, and a co-defendant readily admitted violations of Arizona Prohibited Possessor laws. It is of no consequence officers only cited the open container as a basis for the search, this Court can consider the existence of probable cause for other crimes. The defendant's Motion should be denied.

Respectfully submitted this 2nd day of December, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Julie A. Sottosanti*
Assistant U.S. Attorney

Copy of the foregoing served electronically or by
Other means this 2nd day of December, 2025, to:

All ECF Participants