**The Law Offices of Nicholas Brereton, PLLC**
One South Church, Ave, Suite 1200
Tucson, AZ 85701
Phone: 520 448-5082
Fax: 520 448-5101
Nicholas W. Brereton, PCC #66685 AZ Bar #031485
nick.nblaw@gmail.com
Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Ismael Higuera-Avalos,<br><br>　　　　Defendant. | 4:24-cr-05616-RM-JR-2<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

**COMES NOW** the Defendant Ismael Higuera-Avalos and respectfully requests this Court sentence him to a term of probation or, if a period of incarceration is to be imposed, that it mirror the twelve months and one day sentence given to co-Defendant Francisco Bell. Either sentence would be "sufficient but not greater than necessary" to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Ismael Higuera-Avalos made a terrible mistake becoming involved in this case. It is easy to blame his decision-making on pressure from rogue family members or substance abuse clouding his mind but instead he comes before the Court to accept full responsibility for his actions. Ismael hopes the Court imposes a sentence that considers his age, family support and

1

obligations, efforts at rehabilitation, employment, history, lack of criminal history, and time already served in custody.

## SENTENCING CONSIDERATIONS

The applicable guideline range under the Pre-Sentence Report calculations is 121-151 months. The Pre-Sentence Investigation Report recommends a sentence of 36 months with three (3) years of Supervised Release. An objection has been filed to the classification of Mr. Higuera-Avalos as having a supervisory role in the offense. (ECF 164). If this objection is sustained, Mr. Higuera-Avalos' guideline range would be 87-108 months.

A sentence of probation or twelve months and one day and a period of Supervised Release would satisfy the requirement of 18 U.S.C. §3553(a) that the sentence be sufficient, but not greater than necessary in light of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established . . .;
(5) any pertinent [Sentencing Commission] policy statement . . .;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

**Argument in Mitigation**

A. Family Ties and Responsibilities

Ismael Higuera-Avalos is part of a very large family. It is likely difficult to keep track of everyone. Ismael is only 25 years old, but he alone has six (6) children. He has a substantial and ever-growing number of siblings, nieces, nephews, uncles, aunts, and cousins. Family is an extremely important part of Ismael's life and he has been supported by his parents throughout this case. After some issues with substance abuse relapse, which will be discussed *infra*, Ismael's parents have given him a safe and stable platform from which to build on the lessons and skills learned at CBI inpatient rehab.

Family has also been Ismael's Achilles heel. In this case, one of his co-Defendants is his cousin, Anthony. Mr. Higuera-Avalos' cousin appears to have been far more deeply connected to the business of trafficking in firearms than Ismael. According to the Pre-Sentence Report, co-Defendant Bell told agents that Anthony operated out of Chicago and the investigation revealed trips Anthony took between Mexico and multiple locations in the United States. If anyone is likely to have lured Ismael into participation in this offense, it would be his more experienced and involved cousin.

Mr. Higuera-Avalos is a grown man with six (6) children, however, and does not seek to blame his actions on others or make excuses. He takes full responsibility for his own actions and decisions. This decision to engage in this offense could cost Ismael the next decade of his life away from his children and the precious moments he is fortunate enough to have been present

for since his release from custody. Ultimately, his ultimate goal is to provide for all of his children and to continue being an active father and positive role model. This motivation and the impact extensive incarceration would have on his family will deter any further similar conduct.

B. <u>Employment</u>

Mr. Higuera-Avalos has been employed for most of his adult life. He has worked in various labor and hospitality positions but his current role in car customization is where his true career interests lie. Ismael intends to continue in this line of work and gain more skills and training so that he can perhaps open his own store someday.

C. <u>Criminal History and Time Spent in Custody</u>

Ismael has no criminal history reported in his Pre-Sentence Report. Ironically, if he was before the Court for trafficking human beings rather than firearms, he would fit the criteria for a Zero Point Offender under USSG § 4C1.1 and may even have been considered for the YOUCAN/ICAN program. Nevertheless, as someone who has no criminal history, his first brush with prolonged incarceration had a profound impact. Although the initial arrest appears to have not had the desired effect, Ismael's violation of his release conditions, subsequent four (4) month incarceration, and release to treatment certainly has.

D. <u>Mental, Physical, and Emotional Conditions/Substance Abuse</u>

Mr. Higuera-Avalos is likely only scratching the surface of what may be a lifelong struggle with Post-Traumatic Stress Disorder. In November 2021, Ismael was almost killed when a house he was building collapsed on him. He suffered serious facial injuries caused by

4

an I-beam crashing directly into his jaw. Mr. Higuera-Avalos is extremely fortunate to have survived this incident, and it is a true miracle that his injuries were not more severe.

This accident had a profound impact on Ismael and has caused him to suffer from severe anxiety and depression. He had invasive and painful surgeries and a lengthy recovery time. Although he had experimented with drugs and alcohol prior to this incident, afterwards Ismael began to heavily self-medicate to numb the feelings of fear and pain. He was certainly in the throes of heavy medication abuse and drug use at the time he engaged in the conduct in the above-captioned case. Abusing anti-depressants such as Xanax and even heavy use of marijuana can deaden a person's ability to perceive the consequences of their actions or really even care about what happens to them.

While at CBI, Ismael actively engaged in therapy and treatment for the first time and identified the root cause of his decision to use drugs. He intends to continue with IOP and therapy while on Supervised Release or Probation to make sure he is active in his sobriety, prioritizing his mental health, and avoiding triggers that would cause a relapse.

E. Performance on Pre-Trial Services

There is no doubt that Ismael struggled initially upon his release from custody. He continued to use marijuana for anxiety and pain relief despite knowing it was not permitted under the Federal law. This conduct resulted in his return to custody and four (4) months passed before he was released again to inpatient treatment at CBI. Ismael did not disappoint when given a second chance. He has not had any subsequent issues with compliance and has been very active

in putting his life straight. After CBI, he has stayed at home with his parents and prioritized work and his children. This is the life he plans to live going forward.

F. Remorse

Mr. Higuera-Avalos is genuinely remorseful and accepts responsibility for his actions and expressed this during his Pre-Sentence Interview and will do so directly to the Court. He is remorseful for becoming involved in a business that creates danger to innocent people on both sides of the border and for the impact his actions have had on his own family.

Ismael was not directing a firearm trafficking conspiracy. He was a young man under the influence of drugs, enticed by fast money and the thrill of doing something wrong. Perhaps he was in the process of self-destructing and one thing or another would have brought him to the rock bottom point that this case represents.

G. Sentencing Disparities

Mr. Higuera-Avalos' co-Defendant Francisco Bell was sentenced to 12 months and one day with 2 years of Supervised Release. Although the Government and Probation disagree, there is little that separates Bell and Higuera-Avalos' level of involvement in this offense. Both 'recruited' others, both were present and purchased firearms at the gun show. The hallmark of gun trafficking conspiracies is the use of unwitting dupes with clean records to purchase firearms so that they cannot be traced to the people profiting at the top. Ismael and Bell walked into the gun show with no attempt to disguise themselves and made these purchases themselves. Both

men have more involvement in this case than people who are asked to make a one-time purchase. However, this does not make Ismael any more than an average participant.

Moreover, little separates the two with regard to their post-arrest conduct. While Bell seems to have done well immediately, Ismael had a false start but ultimately caught up to him. Should the Court determine that Mr. Higuera-Avalos deserves some additional penalty for his actions beyond what Mr. Bell received, this could be applied to a longer term of supervision, either with a 5-year term of probation to begin immediately or a 3-year term of Supervised Release with a 12 month and one day prison sentence. Applying any difference in sentences to the period of incarceration is not necessary to have the effect that has already occurred from Ismael's four (4) months previously served.

<u>CONCLUSION</u>

Ismael's decision to commit this offense can be attributed to immaturity, family ties, and a mind clouded by self-medication. He has addressed these three contributing factors and made the conscious decision to chart a new path for himself. If given the opportunity to serve a term of supervision he will not fail this Court's trust. If a sentence of incarceration must be imposed, he asks it be no different than his similarly situated co-Defendant Bell.

**RESPECTFULLY SUBMITTED** this 12th day of February, 2026.

LAW OFFICES OF NICHOLAS BRERETON

__/s/ Nicholas Brereton_____
By: Nicholas W. Brereton, Esq
Attorney for Defendant

Copy of the foregoing served electronically or by other means this 12th day of February, 2026 to:
All ECF Participants